UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| FECON, INC., | ) |
| | ) |
| Plaintiff, | ) Case No. 1:18-cv-00748 |
| | ) |
| vs. | ) Judge Michael R. Barrett |
| | ) |
| DENIS CIMAF, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**OPINION AND ORDER**

This matter is before the Court on the Defendant's Motion to Dismiss Count 1 (of the Complaint) pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 12).[1] Plaintiff filed a memorandum in opposition (Doc. 20), to which Defendant replied (Doc. 22). Oral argument was held at Plaintiff's request.[2] (Doc. 24). For the reasons that follow, Defendant's Motion will be DENIED.

**I.     BACKGROUND**[3]

Plaintiff Fecon, Inc. ("Fecon") is the "industry leader" in forestry mulching attachments. (Doc. 1 (¶ 9)). Among other products, Fecon sells a line of hydraulic mulchers that attach to skid steers, which are small, rigid-frame, engine-powered machines with lift arms. (*Id.* (¶ 10)). Fecon also sells various cutting "teeth" that fasten to mulchers. (*Id.* (¶ 12)).

---

[1] Defendant seeks dismissal of the Complaint without leave to amend. (Doc. 12 PAGEID 46, 65).

[2] (*See* Doc. 20 PAGEID 156 (caption)).

[3] Because the pending motion to dismiss is brought pursuant to Fed. R. Civ. P. 12(b)(6), the Court accepts as true the factual allegations made by Plaintiff in its Complaint. *See infra* Part II.

1

Fecon is the owner (by assignment) of United States Design Patent No. D795,931 (the "D'931 Patent"), which was issued on August 29, 2017. (*Id.* (¶¶ 7, 8); Doc. 1-1 PAGEID 9). Fecon's D'931 Patent claims "[t]he ornamental design of a land clearing tool interface," specifically a V-back mulcher tooth interface. (Doc. 1 (¶ 13); Doc. 1-1 PAGEID 9). The D'931 Patent is a division of a prior design patent application that issued as United States Design Patent No. D757,124 (the "D'124 Patent"). (Doc.1-1 PAGEID 9). The D'124 Patent was a continuation of a utility patent application that eventually issued as United States Patent No. 8,540,033. (*Id.*). As explained by Fecon, "the '033 Patent (a *utility* patent) disclosed an *invention* with (1) a rotatable drum, (2) a tool holder on the drum, and (3) a land preparation tool (i.e., a mulcher tooth); the D'124 Patent and the D'931 Patent (*design* patents) disclosed respective ornamental *designs* for one of multiple teeth that could interface with the tool holder disclosed in the '033 Patent." (Doc. 20 PAGEID 159 (emphases in original)).

Defendant Denis Cimaf, Inc. ("Cimaf") sells mulcher teeth as well, relevant here its V-Back Blade. (*See* Doc. 1 (¶¶ 1, 14, 15)). On or about August 31, 2018, Fecon wrote Cimaf, enclosed a copy of the D'931 Patent, and accused Cimaf of patent infringement. (*Id.* (¶¶ 16, 17)). This lawsuit followed.

Two separate theories underpin Defendant Cimaf's motion to dismiss: non-infringement and invalidity.

## II. LEGAL STANDARD

Rule 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. Civ. P. 12(b)(6). To withstand a dismissal motion, a complaint must contain "more than labels and conclusions [or] a formulaic

2

recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is **plausible** on its face." *Id.* at 570 (emphasis added). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court examining the sufficiency of a complaint must accept the well-pleaded allegations of the complaint as true. *Id.*; *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014). While a court must accept as true the factual allegations of the complaint, it is not so bound regarding legal conclusions, particularly when couched as the former. *Id.* at 678–79 (citing *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986))).

On a Rule 12(b)(6) motion, a district court "may consider exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (internal quotation and citation omitted). The ability of the court to consider supplementary documentation has limits, however, in that it must be "clear that there exist no material disputed issues of fact concerning the relevance of the document." *Mediacom Se. LLC v. BellSouth Telecomms., Inc.,* 672 F.3d 396, 400 (6th Cir. 2012) (internal quotation and citation omitted).

A court may take judicial notice of a fact "not subject to reasonable dispute" if it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may take judicial notice on its own and "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(d). Courts may take judicial notice of patents, patent applications, and patent prosecution histories. *See generally Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n.27 (Fed. Cir. 1993).

As will be discussed in greater detail, Defendant Cimaf's motion to dismiss is based in part on its affirmative defense of invalidity. "Although a court may grant a motion to dismiss founded upon the assertion of an affirmative defense, it may do so only if all of the facts necessary to establish the defense are contained within the complaint itself." *Koenig v. USA Hockey, Inc.*, No. 2:09-cv-1097, 2010 WL 4642923, at *3 (S.D. Ohio Nov. 9, 2010) (citation omitted).

### III.   ANALYSIS

A utility patent protects "any new and useful **process**, **machine**, **manufacture**, or **composition of matter**, or any new and useful improvement thereof[.]" *See* 35 U.S.C. § 101 (emphases added). In contrast, "[a] design patent is directed to the **appearance** of an article of manufacture." *PHG Technologies, LLC v. St. John Companies, Inc.*, 469 F.3d 1361, 1366 (Fed. Cir. 2006) (emphasis added) (citing *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993)); *see* 35 U.S.C. § 171(a) ("Whoever invents any new, original and **ornamental** design for an

4

article of manufacture may obtain a patent therefor[.]") (emphasis added)[4].  "If the particular design is essential to the use of the article, it can not be the subject of a design patent."  *L.A. Gear*, 988 F.2d at 1123.  "To be patentable, a design must be '**primarily ornamental**.'"  Manual of Patent Examining Procedure § 1504.01(c) (emphasis added).

### A. The Complaint States a Claim for Patent Infringement

**Summary of the arguments**.  Cimaf argues that the images within the Complaint establish that its V-Back Blade does not infringe the D'931 Patent.  Fecon responds that infringement is a factual question and the designs at issue are not so plainly dissimilar as to render it implausible that an ordinary observer would confuse them.

**Discussion**.  "[A]s is always the case, the burden of proof as to infringement remains on the patentee."  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008).  "Design patent infringement is a **question of fact**, which a patentee must prove by a preponderance of the evidence."  *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1295 (Fed. Cir. 2010) (emphasis added) (citing *L.A. Gear*, 988 F.2d at 1124).  But "[w]here the claimed and accused designs are 'sufficiently distinct' and 'plainly dissimilar,' the patentee fails to meet its burden of proving infringement as a

---

[4] "Thus, by statute, a design patent is limited to one article of manufacture, and an inventor of an ornamental design may obtain a patent for that design for that article."  *Curver Luxembourg, SARL v. Home Expressions Inc.*, No. 2:17-cv-4079-KM-JBC, 2018 WL 340036, at *6 (D.N.J. Jan. 8, 2018).  *See also* 35 C.F.R. § 1.153 ("The title of the design must designate the particular article.  No description, other than a reference to the drawing, is ordinarily required.  The claim shall be in formal terms to the ornamental design for the article (specifying name) as shown, or as shown and described.  More than one claim is neither required nor permitted.").

5

matter of law." *Ethicon Endo-Surgery, Inc. v. Covidien*, Inc., 796 F.3d 1312, 1335 (Fed. Cir. 2015) (citing *Egyptian Goddess*, 543 F.3d at 678).

Infringement of a design patent "is evaluated in a two-step process." *Arminak and Associates, Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1319 (Fed. Cir. 2007), *abrogated on other grounds by Egyptian Goddess*.[5] Courts first "construe the claims of the design patent to determine their meaning and scope[,]" and then "compare the construed claims to the accused design." *Id.* at 1319, 1320 (citations omitted).

"Design patents typically are claimed as shown in [the] drawings[] and [c]laim construction by a court is adapted accordingly." *Id.* at 1319 (citing *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1116 (Fed. Cir. 1998)); *see* Manual of Patent Examining Procedure § 1503.02 ("[T]he drawing or photograph constitutes the entire visual disclosure of the claim.").[6]

"[A] design patent is infringed 'if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same.'" *Samsung Electronics Co., Ltd. v. Apple Inc.*, 137 S. Ct. 429, 432 (2016) (quoting *Gorham Mfg. Co. v. White*, 81 U.S. 511, 525 (14 Wall.) (1871)); *see Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*, 67 F.2d 428, 430 (6th Cir. 1933) (applying *Gorham*, "The ordinary observer is not any observer, but one who, with less than the trained faculties of the expert, is 'a purchaser of things of similar design,' or 'one interested in the subject.'"). "In some instances, the claimed design and the accused design will be

---

[5] *See Richardson*, 597 F.3d at 1293 ("In *Egyptian Goddess* [543 F.3d at 678], we abandoned the point of novelty test for design patent infringement and held that the ordinary observer test should serve as the sole test for infringement.").

[6] A design patent claims only what is defined by the solid lines of a figure. Any portion of the figure formed by broken lines is for illustrative purposes only and forms no part of the claimed design. *See* Manual of Patent Examining Procedure § 1503.02.

sufficiently distinct that it will be clear without more than the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer, as required by *Gorham*." *Egyptian Goddess*, 543 F.3d at 678.[7]

"If the claimed and accused designs are **not plainly dissimilar**, the inquiry may benefit from **comparing the claimed and accused designs with prior art** to identify differences that are not noticeable in the abstract but would be significant to the hypothetical ordinary observer familiar with the prior art." *Ethicon Endo-Surgery*, 796 F.3d at 1335 (citing *Egyptian Goddess*, 543 F.3d at 678) (emphases added). '[C]omparing the claimed and accused designs with the prior art **is beneficial only when the claimed and accused designs are not plainly dissimilar**." *Id.* at 1337 (citing *Egyptian Goddess*, 543 F.3d at 678) (emphasis added).

"Differences, however, must be evaluated in the context of the claimed design as a whole, and not in the context of separate elements in isolation." *Id.* at 1335. When the claimed design "includes several elements, the fact finder must apply the ordinary observer test by comparing similarities in overall designs, not similarities of ornamental features in isolation." *Id.* (citing *Richardson*, 597 F.3d at 1295); *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303–04 (Fed. Cir. 2010)). "An element-by-element comparison, untethered from application of the ordinary observer inquiry to the overall design, is procedural error." *Ethicon Endo-Surgery*, 796 F.3d at 1335 (citing *Amini Innovation Corp. v. Anthony Cal., Inc.*, 439 F.3d 1365, 1372 (Fed. Cir. 2006)).

---

[7] "A district judge is an ordinary observer, and courts may therefore conduct the ordinary-observer test without referring to some hypothetical ordinary observer." *Silverman v. Leombruni*, No. 15 Civ. 2260 (PAC), 2016 WL 715735, at *2 (S.D.N.Y. Feb. 19, 2016) (quoting *Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.*, 491 F. Supp. 2d 871, 877 (D. Minn. 2007) (citing *Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, 93 F. App'x 214, 216 (Fed. Cir. 2004) ("[A] district court properly construes design claims through its own eyes and need not refer to an ordinary observer or skilled artisan."))).

Even though design patent infringement is a question of fact, Cimaf maintains that "courts can and do determine infringement as a matter of law at the motion to dismiss stage." (Doc. 12 PAGEID 51 (citing, as one example, *MSA Prods., Inc. v. Nifty Home Prods., Inc.*, 883 F. Supp. 2d 535, (D.N.J. 2012))).[8] The undersigned does not necessarily disagree with this proposition. Still, it is "generally inappropriate to determine [design patent infringement] on a motion to dismiss, unless the claimed design and accused product are so plainly dissimilar that it is implausible that an ordinary observer would confuse them." *Enerlites, Inc. v. Century Prods., Inc.*, No. SACV 18-839 JVS(KESx), 2018 WL 4859947, at *3 (C.D. Calif. Aug. 13, 2018).

In Cimaf's view, its accused product and the patent-in-suit are plainly dissimilar in four respects. The D'931 Patent claims "[t]he ornamental design of a land clearing tool interface, as shown and described." (Doc. 1-1 PAGEID 9). Figure 2 depicts a rounded, v-shaped, nonplanar[9] profile. (*Id.* PAGEID 11). In contrast, the profile of Cimaf's V-Back Blade consists of three separate and straight angled planes that form the outwardly facing mounting surface. (*See* Doc. 1 (¶ 15) PAGEID 4–5). Next, when viewed from the side, Cimaf's V-Back Blade is not angled as depicted in Figure 4, but instead flat.[10] (*Cf.* Doc. 1-1 PAGEID 12). Also, when viewed from the back, the side

---

[8] "Numerous" courts have dismissed design patent claims at the pleading stage, according to Cimaf, including in cases that subsequently were affirmed by the Federal Circuit. (Doc. 12 PAGEID 51 & n.2). But as later discussed in the body of this Opinion and Order, the cases Cimaf cites are distinguishable.

[9] Nonplanar is defined as "not planar: not lying or able to be confined within a single plane: having a three-dimensional quality." https://www.merriam-webster.com/dictionary/nonplanar (last visited 08/10/2021). At oral argument, Cimaf described Figure 2's profile as a "rounded surface."

[10] The figure Cimaf uses for comparison can be found at https://www.youtube.com/watch?v=RHPwEECC1Pg, which is referenced in the Complaint. (*See* Doc. 1 (¶15) PAGEID 4–5).

portions of Cimaf's V-Back Blade are straight[11] and do not curve inwardly as depicted in Figure 7.[12] (*Cf.* Doc. 1-1 PAGEID 13). And, relatedly, when viewed from the front and back, Cimaf's V-Back Blade does not have the curved and straight lines along the side as depicted in Figures 2 and 7.[13] (*Cf.* Doc. 1-1 PAGEID 11, 13). To summarize, then, Cimaf contends that the "ordinary observer" test cannot be satisfied because the accused product has three separate and straight angled planes, compared to the rounded profile of the D'931 Patent; has a flat bottom portion, compared to the angled bottom portion of the D'931 Patent; has straight side portions, compared to the inwardly curved side portions of the D'931 Patent; and does not have curved and straight lines along the sides, as depicted in the D'931 Patent. (*See* Doc. 22 PAGEID 183).

Fecon counters that these are subtle, minor differences that ignore similarities in the overall design, which is impermissible under the controlling case law. See *Crocs*, 598 F.3d at 1303 ("[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement.") (citations omitted). The Court agrees.

In *Crocs*, as Fecon explains, the Federal Circuit reversed a finding of non-infringement by the United States International Trade Commission, because the Commission "used minor differences between the patented design and the accused products to prevent a finding of infringement. In other words, the concentration on small

---

[11] The figure Cimaf uses for comparison can be found at https://www.youtube.com/watch?v=RHPwEECC1Pg, which is referenced in the Complaint. (*See* Doc. 1 (¶15) PAGEID 4–5).

[12] At oral argument, Cimaf described Figure 7's profile as a "flaring out like a skirt."

[13] The figures Cimaf uses for comparison can be found at https://www.youtube.com/watch?v=RHPwEECC1Pg, which is referenced in the Complaint. (*See* Doc. 1 (¶15) PAGEID 4–5).

differences in isolation distracted from the overall impression of the claimed ornamental features." *Id.* at 1303–04. The Federal Circuit found infringement even though: the strap of the patented design extended to the heel of the shoe but the strap of the accused product did not; the strap of the patented design was of uniform width but the strap of the accused product was not; the holes on the roof of the upper of the patented design were round but the holes of the accused product were square; and the holes on the roof of the upper of the patented design were in a systemic pattern but the holes of the accused product were in a spiderweb pattern. *Id.* at 1301, 1303–06.

*Gorham*, *supra*, the seminal case in which the Supreme Court compared silverware, is likewise instructive. At the neck of the handle (near the tines of a fork or the bowl of a spoon), the patented design is curved but the accused product is pointed. At the tip of the handle, the outer bead of the patented design terminates, curls up and out, and does not come to a point, but the outer bead of the accused product is continuous, curls down and in, and comes to a rounded, triangular point. Despite these differences, the Supreme Court found design patent infringement.

Cimaf cites several cases in support of dismissal of design patent claims at the pleading stage.[14] They include *Colida v. Nokia, Inc.*, where the Federal Circuit reviewed

---

[14] Cimaf cites two cases in which a plaintiff sought to apply a design patent for one type of article to a completely different type. *See Kellman v. Coca-Cola Co.*, 280 F. Supp. 2d 670, 678–80 (E.D. Mich. 2003) (dismissing a claim that a t-shirt and bottlecap infringed a patented design for a hat) and *Virgil v. Walt Disney Co.*, No. C-97-4147 MHP, 1998 WL 36015437, at *3 (N.D. Cal. Dec. 1, 1998) (dismissing a claim that a key chain infringed on a patented design for a duck call). Here, though, we compare the same type of article—mulcher teeth—thus rendering these cases inapposite.

Cimaf cites other cases that lack images, but the various narratives describe designs that are plainly dissimilar. *See MSA Prods., Inc. v. Nifty Home Prods., Inc.*, 883 F. Supp. 2d 535, 540–41 (D.N.J. 2012) (comparing a roughly square shaped, single drawer K-Cup holder wide enough to hold six K-Cups to a rectangular shaped, three drawer K-Cup holder wide enough to hold three K-Cups); *Cotapaxi Custom Design and Mfg., LLC v. Corp. Edge, Inc.*, No. 06-5183 (JAG), 2007 WL 2908265, at *4–5 (D.N.J. Oct. 1, 2007) (comparing ball point pens).

the allegations of infringement, along with figures of the asserted patent and pictures of the accused product, and affirmed the district court's dismissal of the complaint, because "Colida's infringement claims were facially implausible and provided the district court with no basis on which to reasonably infer that an ordinary observer would confuse the pleaded patented designs with the accused Nokia 6061 phone." 347 F. App'x 568, 570 (Fed. Cir. 2009) (per curiam), *aff'g* No. 07 Civ. 8056 (KMW)(HBP), 2008 WL 4449419 (S.D.N.Y. Sept. 29, 2008) (*adopting report and recommendation* 2008 WL 4517188 (S.D.N.Y. May 6, 2008)). Yet Cimaf neglects to mention that the pro se plaintiff filed only a "two-page informal [appellate] brief" that offered "no arguments" and thus no challenge to the district court's implausibility finding. 347 F. App'x at 569[15] ("Colida provides no basis for us to rule in his favor.").[16] Moreover, the designs were plainly dissimilar in all respects except for all being folding mobile phones. *Id.* at 570–71 ("The magistrate [judge] concluded, for example, that three of Colida's patents show no visible antenna on the phone, while the Nokia 6061 has a 'short, thick antenna.'").

Cimaf also cites *Legler v. Exxel Outdoors, Inc.*, No. 13-C-668, 2014 WL 3727566 (E.D. Wis. July 29, 2014). There, unlike here, the plaintiff "apparently concede[d]" non-infringement if her patent was construed as written. *Id.* at *2. The design patent-in-suit claimed the "ornamental design for a transportable and compactible sleep mat and cot

---

[15] The Federal Circuit also commented, "Colida is no stranger to patent litigation: he has appealed many times to this court, and we have affirmed judgments of noninfringement against him at least nine times. Several of these decisions involved infringement claims [regarding the same] patents." 347 F. App'x at 569.

[16] *See GSC Tech. Corp. v. Umbra, LLC*, No. 07-CV-461S, 2011 WL 1376733, at *5 n.3 (W.D.N.Y. Apr. 12, 2011) ("[P]laintiff never challenged the district court's implausibility finding, which was a significant factor in the Circuit's affirmance.").

cover for children, as shown and described." *Id.* at *1. But the plaintiff asked the court to instead limit its construction to the "novel, ornamental features of the patented design," to exclude the handle, flaps and fasteners because their inclusion was "driven purely by utility" as they "mad[e] the mat compactible and easy to carry." *Id.* at *2. The problem with this argument, the court noted, was that the handle, fasteners and flaps were all depicted using solid lines, not broken ones. *Id.*[17] Furthermore, without the handle, fasteners and flaps, the design would be without any purely ornamental features entitled to patent protection. *Id.* The court therefore construed the handle, fasteners and flaps as ornamental, not functional, and proceeded to the "ordinary observer" test. *Id.* at *3. No matter how much the plaintiff manipulated the accused product in the photographs she included as part of her complaint, the patent-in-suit had flaps, fasteners, and a handle, whereas the accused product had only a Velcro square covering the air valve. *Id.* at *4. "Both items are sleep mats, but to state the obvious, [the plaintiff's] design is for a sleep mat that is **compactible** and **transportable**, while the [accused product] lacks an intrinsic method for storage or transport. The distinction between these two items is manifest." *Id.* *5 (emphasis in original).

In addition to featuring *Legler* during oral argument, Cimaf also spotlighted *Moose Mountain Toymakers Ltd. v. Majik Ltd., LLC*, No. 10-4934 (DMC)(JAD), 2011 WL 3625057 (D.N.J. Aug. 12, 2011), a dispute over a toy bowling game.[18] Acting as the ordinary observer, the court concluded that the patents-in-suit were not "substantially

---

[17] *See supra* note 6.

[18] Cimaf clarified that the images it used to argue its point —that is, the side-by-side comparison of the design patent figures and the accused product—were taken from the defendant's brief rather than the court's order. (Doc. 12 PAGEID 40 n.3).

similar" to the accused product.  *Id.* at *3 (citing *Gorham*).  "Though there are certainly similarities between Majik Bowl and the Patents, as there must be between all toy bowling ball games, they are trumped by the ornamental differences."  *Id.*  Among other differences, the court focused on the "distinct triangular enclosure" of the accused product, and the "cartoon-like sign advertising the name of the game and displaying a bowling ball knocking into pins," as well as "similar pictures of a bowling ball and pins" on the sides of the enclosure and the netting behind the pins.  *Id.*

Based on the undersigned's comparison of the exemplary figures from the D'931 Patent and the computer illustrations of the accused product taken from Cimaf's website, this is not "an instance in which the products are so dissimilar that it is clear that the ordinary observer test cannot be satisfied."  *Enerlites*, 2018 WL 4859947, at *4.  There simply are not "obvious and noticeable differences in overall appearance" between two, *see Moose Mountain*, 2011 WL 3625057, at *3, notwithstanding the red line annotations provided by Cimaf at oral argument.  Consequently, Cimaf's motion to dismiss based on non-infringement will be denied, "because it is plausible that an ordinary observer could be deceived into believing that the accused product is the same as the claimed design."  *Id.*

### B. At the Pleading Stage, Cimaf Cannot Establish that the D'931 Patent is Invalid Based on Functionality

**Summary of the arguments**.  Cimaf argues that the D'931 Patent is invalid because the inventors of the '033 Patent (the utility patent), who are also the inventors of the D'931 Patent,[19] admitted to the United States Patent and Trademark Office

---

[19] Jeffrey Stanley and Robert Hentz are listed as the inventors in both patents.  (*Cf.* Doc. 12-1 PAGEID 71 *with* Doc. 1-1 PAGEID 9).

("USPTO") that the design claimed is functional rather than ornamental.  Cimaf also points to language within the utility patent itself that the design claimed in the D'931 Patent is "entirely functional."  (Doc. 12 PAGEID 40).

Fecon responds that dismissal at the pleading stage is "unheard of" for design patents, because whether a patented design is functional is a question of fact.  (*See* Doc. 20 PAGEID 156).  Moreover, the prosecution history highlighted by Cimaf does not demonstrate functionality by the applicable clear and convincing standard and there is no evidence before the Court regarding the availability of alternatives.

**Discussion**.  Both utility and design patents are presumed to be valid, and overcoming that presumption is an affirmative defense the requires clear and convincing evidence.  *See* 35 U.S.C. § 282(a) ("A patent shall be presumed valid. . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."); *Microsoft Corp. v. i4i Limited Partnership*, 564 U.S. 91, 95 (2011) ("We consider whether § 282 requires an invalidity defense to be proved by clear and convincing evidence.  We hold that it does.").

"[A] design patent can be declared invalid if the claimed design is **primarily functional** rather than **primarily ornamental**, i.e., if the claimed design is **dictated by** the utilitarian purpose of the article."  *High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d 1301, 1315 (Fed. Cir. 2013) (cleaned up) (emphases added).  The Federal Circuit has "described as 'stringent' this standard as it applies to invalidating design patents on grounds of functionality."  *Ethicon Endo-Surgery*, 796 F.3d at 1328 (citing *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002)).  Whether a patented design is

functional is a question of fact. *See Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997).

"In determining whether a claimed design is primarily functional, '[t]he function of the article itself must not be confused with "functionality" of the design of the article.'" *Ethicon Endo-Surgery*, 796 F.3d at 1328 (quoting *Hupp*, 122 F.3d at 1462); *see Hupp*, 122 F.3d at 1460 ("[T]he fact that the article of manufacture serves a function is a prerequisite of design patentability, not a defeat thereof."); Manual of Patent Examining Procedure § 1504.01(c) ("The design for the article <u>cannot be assumed</u> to lack ornamentality merely because the article of manufacture would seem to be primarily functional." (emphasis in original). "A design patent is for a useful article, but patentability is based on the design of the article, not the use. The design may contribute distinctiveness or consumer recognition to the design, but an absence of artistic merit does not mean that the design is purely functional." *Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1368 (Fed. Cir. 1999). "The 'ornamental' requirement of the design statute means that the design must not be governed solely by function, *i.e.*, that this is not the only possible form of the article that could perform its function." *Id.* (citing *L.A. Gear*, 988 F.2d at 1123). The Federal Circuit has "not mandated applying any particular test for determining whether a claimed design is dictated by its function and therefore impermissibly functional." *Ethicon Endo-Surgery*, 796 F.3d at 1329. But it has "often" focused "on the availability of alternative designs as an important—if not dispositive—factor in evaluating the legal functionality of a claimed design." *Id.* at 1329–30.

Cimaf's contention that a 12(b)(6) dismissal on the basis of invalidity is warranted recycles an argument made before this Court by a different defendant regarding the D'124 Patent, a member of the same patent family. Citing *Ethicon Endo-Surgery* and *Hupp*, our colleague Judge Black summarily rejected the premise that "the claimed tool design of the '124 patent is solely functional because the related parent patent application discusses the tool's functionality." *Fecon, Inc. v. King Kong Tools, LLC*, No. 1:16-cv-1137, 2017 WL 4869000, at *3–4 (S.D. Ohio June 27, 2017). Because determining whether a claimed design is primarily functional "should begin with an inquiry into whether alternative designs can provide the same or similar functional capabilities[] . . . [t]his type of factual inquiry is not appropriate for a motion to dismiss." *Id.* at *4 (citing *L.A.Gear* and *Rosco*). The case law requires that undersigned reach the same result here as to the D'931 Patent.

Cimaf devotes significant attention in its papers to statements in the parent utility patent, given under oath, that it believes are party admissions against interest on the issue of whether the design claimed in the D'931 Patent is functional. (*See* Doc. 12 PAGEID 60–65). And, at oral argument, Cimaf cited *Five Star Mfg., Inc. v. Ramp Lite Mfg., Inc.*, 4 F. App'x 922, 923 (Fed. Cir. 2001) for the proposition that testimony by inventors of a design patent as to the functional aspects of the claimed design supports a finding—by the required clear-and-convincing-evidence standard—that "the claimed design in its entirety was dictated by a utilitarian purpose."

An inventor's testimony as to invalidity is "undoubtedly" material in patent infringement cases. *See Maxchief Investments Ltd. v. Plastic Development Group*, LLC, No. 3:16-cv-63, 2016 WL 7209553, at *8 (E.D. Tenn. Dec. 12, 2016) (citing, *inter*

16

*alia*, *Five Star*). *Five Star*, however, was not decided at the pleading stage. Rather, the testimony was *deposition* testimony of one of the inventors, which was corroborated by what the undersigned infers to be the *trial* testimony of the other co-inventor, *upon which a jury relied*, in part, *to return a verdict*. 4 F. App'x at 923–24. The Court certainly can envision the sworn statements appearing in the parent utility patent and its prosecution history being used as a cross-examination tool. But they are insufficient to support an affirmative defense that must be proved by clear and convincing evidence. Thus, Cimaf's motion to dismiss based on the affirmative defense of invalidity will be denied.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Count 1 (of the Complaint) pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 12) is **DENIED** in its entirety.

**IT IS SO ORDERED.**

/s/ *Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court